**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JUANITA MUSE,** *individually, and on behalf of all other similarly situated consumers,* | |
| **Plaintiff,** | **CIVIL ACTION NO. 19-2499** |
| **v.** | |
| **HOLLOWAY CREDIT SOLUTIONS, LLC** | |
| **Defendant.** | |

**MEMORANDUM OPINION**

**Rufe, J.**                                                      **December 8, 2020**

Plaintiff Juanita Muse, on behalf of herself and all others similarly situated, filed this

action against Defendant Holloway Credit Solutions for violation of the Fair Debt Collection

Practices Act ("FDCPA")[1]. Plaintiff now moves for class certification. For the reasons stated

below, class certification will be granted.

**I.      BACKGROUND**

On June 28, 2018, Plaintiff received a letter sent by Defendant that sought to collect a

personal medical debt.[2] This letter stated:

> This communication is from a debt collector. This is an attempt to collect a debt.
> Any information obtained will be used for that purpose. Unless you notify this
> office within 30 days after receiving this notice that you dispute the validity of
> this debt or any portion thereof, this office will assume the debt is valid. The
> Third Circuit Court of Appeals has determined that any dispute to a debt collector
> must be made in writing. If you notify this office in writing within 30 days after
> receiving this notice that you dispute the validity of this debt or any portion
> thereof, this office will obtain verification of the debt and a copy of a judgment,

---

[1] 15 U.S.C. § 1692 *et seq.*

[2] [Doc. No. 1] ¶ 6.

or the name and address of the original creditor if different from the current creditor and will provide the information to you in writing.[3]

Plaintiff alleges that this wording violates § 1692g(a)(4) and (5) by improperly conflating the requirements of the two paragraphs.[4] Plaintiff alleges that such wording "deprives the consumer of the information concerning their rights."[5]

Plaintiff now moves for class certification for the class defined as:

All consumers with a Pennsylvania address for which Defendant sent a collection letter substantially similar to [that received by Plaintiff] during a period beginning one year prior to the filing of this initial action and ending 21 days after the service of the initial complaint filed in this action.[6]

There is no dispute that this class would have 32 members.[7]

## II.   LEGAL STANDARD

For class certification to be granted, Plaintiff must first demonstrate that the four elements of Federal Rule of Civil Procedure 23(a) have been met. These elements are: (1) numerosity – the class is so numerous that joinder of all members is impracticable; (2) commonality – there are questions of law or fact common to the class; (3) typicality – the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) adequate representation – the representative parties will fairly and adequately protect the interests of the class.[8]

---

[3] *Id.* ¶ 8.

[4] *Id.* ¶ 11.

[5] *Id.* ¶ 12.

[6] [Doc. No. 22-1] at 2.

[7] [Doc. No. 22-1] at 1.

[8] *See* Fed. R. Civ. P. 23(a).

In addition, the elements of Rule 23(b)(1), (2), or (3) must be satisfied before a class can be certified. Plaintiff proceeds under Rule 23(b)(3),[9] and therefore must show: predominance (a predominate common question of law or fact); and superiority (class action is the superior method for adjudication).[10]

The party seeking class certification has the burden as to all elements,[11] and the Court must conduct "a 'rigorous analysis' of the evidence and arguments put forth."[12] The Court may be required to resolve factual or legal disputes relevant to class certification, and factual determinations must be made by a preponderance of the evidence.[13]

## III.   DISCUSSION

Defendant only challenges class certification on the issue of numerosity; arguing that the class of 32 members does not meet this requirement.[14] However, the Court still considers each element, even if conceded by the parties, to determine if the requirements for class certification are satisfied.[15]

### A.  Numerosity

The numerosity requirement is met when "the class is so numerous that joinder of all members is impracticable."[16] Impracticable is not impossible, and this element refers to "the

---

[9] [Doc. No. 22-1] at 1.

[10] *See* Fed. R. Civ. P. 23(b)(3); *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012).

[11] *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 248 (3d Cir. 2016), *as amended* (Sept. 29, 2016) (quoting *Marcus*, 687 F.3d at 591).

[12] *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012) (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 316 (3d Cir. 2008), *as amended* (Jan. 16, 2009)).

[13] *Hydrogen Peroxide*, 552 F.3d at 307.

[14] *See* [Doc. No. 22-1] at 5, 6; [Doc. No. 26] at 5.

[15] *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).

[16] Fed. R. Civ. P. 23(a)(1).

difficulties of achieving joinder."[17] In determining if numerosity is satisfied, a court must "take into account the context of the particular case" and has "considerable discretion."[18]

There is no minimum number of parties required for a class action, but if the proposed size exceeds 40, the numerosity requirement will generally be met.[19] However, with a proposed class of fewer than 40 members, the "inquiry into impracticability should be particularly rigorous."[20] In *In re Modafinil Antitrust* Litigation, the Third Circuit provided a "framework for district courts to apply when conducting their numerosity analyses."[21] The Third Circuit instructed courts to consider the following "non-exhaustive" list of factors: "judicial economy, the claimants' ability and motivation to litigate as joined plaintiffs, the financial resources of class members, the geographic dispersion of class members, the ability to identify future claimants, and whether the claims are for injunctive relief or for damages."[22] But not all factors are to be considered equally; the first two factors—judicial economy and the ability and motivation to litigate as joined plaintiffs—are "of primary importance."[23]

---

[17] *Modafinil*, 837 F.3d at 249.

[18] *Id.*

[19] *Id.* at 250. On the other hand, the Supreme Court has noted in dicta that a class of fifteen was "too small to meet the numerosity requirement," *Gen. Tel. Co. of the Nw. v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318, 330 (1980), and leading treatises have recognized that 20 members is generally the floor, *see Modafinil*, 837 F.3d at 250.

[20] *Modafinil*, 837 F.3d at 250.

[21] *Id.* at 242.

[22] *Id.* at 253.

[23] *Id.* "If we were to say that judicial economy and the ability of class members to bring their own suits as named parties weighed in favor of class certification, how could the other factors outweigh these considerations even though the core purposes of a class action were being advanced?" *Id.* at 253–54.

1. *Modafinil Factors*

    a. Judicial Economy

Judicial economy is one of the two core purposes of the numerosity requirement. As the Third Circuit has explained:

> [Rule 23(a)(1)] ensures judicial economy. It does so by freeing federal courts from the onerous rule of compulsory joinder inherited from the English Courts of Chancery and the law of equity. Courts no longer have to conduct a single, administratively burdensome action with all interested parties compelled to join and be present.[24]

The analysis of judicial economy asks courts to consider "the administrative burden that multiple or aggregate claims place upon the courts."[25] This includes things such as "docket control, taking into account practicalities as simple as that of every attorney making an appearance on the record."[26]

However, when considering the administrative burden, a court need not consider the counterfactual of each class member bringing individual suits. Under the plain reading of Rule 23(a)(1), a court should only consider a class action as compared to joinder.[27]

Plaintiff argues that the joinder of 32 plaintiffs, would make it "highly impracticable" to coordinate "any sort of hearing, settlement conference, or deposition," especially if some joined

---

[24] *Marcus*, 687 F.3d at 594 (citations omitted).

[25] *Modafinil*, 837 F.3d at 254 (citing *Marcus*, 687 F.3d at 594).

[26] *Id.* at 257.

[27] *Id.* at 253. Similarly, this Court will assume, based on the text of the rule, that all 32 potential members would join the suit. Some courts have acknowledged that it would be unlikely that every proposed member would join the action. *See e.g., Christiana Mortg. Corp. v. Delaware Mortg. Bankers Ass'n*, 136 F.R.D. 372, 378 (D. Del. 1991) ("Courts have noted, for example, that joinder and intervention may be far simpler procedures because it is likely that not all the proposed class members will seek to join the suit."). But if proposed members did not join, any judicial economy argument favoring joinder would be offset by motivation to join arguments favoring class certification.

plaintiffs retained separate counsel.[28] Plaintiff further argues that the separate counsel would "propound different and non-overlapping discovery requests," "requests to take multiple depositions of Defendant," "make their own motions for summary judgment which are not duplicative," and "end up filing their own motions for attorney's fees and statutory damages for their clients."[29]

Although joinder of 32 plaintiffs may create certain logistical challenges, these challenges are less likely to rise to the level of impracticability due to the current advances in remote hearings and conferences. Additionally, as Plaintiff explains, this action "stems from a form letter containing confusing language."[30] As such, "[t]here are no individualized issues of intent, causation of loss, or reliance."[31] This makes it unlikely that joined plaintiffs would request multiple non-overlapping discovery or multiple depositions. Given the narrowness of the legal question, joined plaintiffs would likely participate in cost and resource sharing mechanisms such as joining motions prepared by other plaintiffs.[32] Plaintiff has not shown that considerations of judicial economy favor class certification rather than joinder.

---

[28] [Doc. No. 22-1] at 9.

[29] *Id.*

[30] *See* [Doc. No. 22-1] at 2; Compl. [Doc. No. 1] ¶¶ 8–16.

[31] [Doc. No. 22-1] at 2.

[32] *See Ortez v. Michael P. Morton, P.A.*, No. 18-561, 2019 WL 1417156, at *5 (D. Del. Mar. 29, 2019) (Report and Recommendation) ("Additionally, in a case like this, even if the various plaintiffs had individual counsel, it is to be expected that they would engage in 'cost and resource sharing mechanisms' to help mitigate judicial economy concerns (such as joining in motions or responses to motions that were prepared by counsel for another plaintiff)").

b.  <u>Ability and Motivation to Litigate as Joined Plaintiffs</u>

Access to judicial relief is the second core purpose of the numerosity requirement. As the Third Circuit has explained, "Rule 23(a)(1) creates greater access to judicial relief, particularly for those persons with claims that would be uneconomical to litigate individually."[33] The analysis of the ability and motivation to litigate as joined plaintiffs examines the access to judicial relief. In this analysis, courts are to consider "the stakes at issue for the individual claims and the complexity of the litigation, which will typically correlate with the costs of pursuing these claims."[34]

Each plaintiff's recovery in this FDCPA action is statutorily capped at $1,000.[35] Although a meaningful sum of money, this relatively low amount cuts against a motivation to join and strongly favors a class action.[36] Defendants argue that because attorneys' fees are available under the FDCPA,[37] there is no concern that costs would keep a plaintiff from bringing a claim.[38] But attorneys' fees are only one type of cost involved in litigation. A plaintiff must also consider potential hassles, inconveniences, and demands on their time. These additional costs would be weighed against the statutorily capped recovery. Furthermore, the lack of

---

[33] *Marcus*, 687 F.3d at 594.

[34] *Modafinil*, 837 F.3d at 257.

[35] *See* 15 U.S.C. § 1692k(a)(2)(A). It is unlikely that any plaintiffs would be able to show actual damages given the nature of the alleged statutory violation.

[36] *See Tompkins v. Farmers Ins. Exch.*, No. 14-3737, 2017 WL 4284114, at *4 (E.D. Pa. Sept. 27, 2017) (finding that claims valued at $5,586.00 were unlikely to motive potential class members to join or litigate individually); *Walling v. Brady*, No. 94-410, 1995 WL 447658, at *3 (D. Del. July 19, 1995) (finding that it would be "uneconomical" to bring claims valued at $2700 each individually).

[37] 15 U.S.C. § 1692k(a)(3).

[38] [Doc. No. 26] at 9–10. However, Congress provided for attorneys' fees in the FDCPA and explicitly anticipated the use of class actions. *See* 15 U.S.C. § 1692k(a)(2)(B). This suggests that Congress did not believe that fee shifting alone would be sufficient to motivate individuals to bring FDCPA actions.

attorneys' costs may work against joinder, because a claimant may view the offer to recover as possibly dubious and assume it to be some sort of scam.

As to the complexity of this litigation, this cause of action is statutory in nature and based on a technical interaction of statutory requirements. An individual plaintiff may not grasp the basis of this claim or understand why they are entitled to relief. This could further make a claimant hesitant to join.[39] Considerations of motivation to join strongly favor class certification.

### c.   The Financial Resources of Class Members

The analysis of the financial resources of the class members is related to that of the ability and motivation to join. The potential members of this class are consumer debtors who have received a collection letter from Defendant. Both parties agree that consumer debtors "are likely without great financial means."[40] Defendant again argues that the statutory fee shifting renders this factor a non-issue,[41] but for the same reasons discussed above, this factor significantly favors class certification.

### d.   The Geographic Dispersion of Class Members

The geographic dispersion of class members has been a traditional element of the numerosity analysis.[42] Although the advances in remote hearings, conferences, and depositions, has blunted the effect of geographic dispersion on the impracticability of joinder, it still may cause logistical problems, such as when a defendant needs to depose the joined plaintiffs.

---

[39] Additionally, violations of § 1962g(a) are to be analyzed from the perspective of the "least sophisticated debtor." *See Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000), *as amended* (Sept. 7, 2000). The "least sophisticated debtor" may have even less understanding of the claim asserted.

[40] [Doc. No. 26] at 9.

[41] *Id.* at 10.

[42] *See e.g., In re Wellbutrin XL Antitrust Litig.*, No. 08-2431, 2011 WL 3563385, at *3–4 (E.D. Pa. Aug. 11, 2011).

However, the Court notes that much of the analysis of this factor can also be part of the judicial economy analysis.

In this action, every potential member of the class resides within the Commonwealth of Pennsylvania. While some members may reside outside of the Eastern District, their relative proximity to this Court favors joinder.

e. The Ability to Identify Future Claimants

The ability to identify future claimants is another traditional element of the numerosity analysis.[43] This is because the need to join unknown future members may make joinder impracticable.[44] The parties here agree that the potential class is closed and there will be no future claimants.[45] Therefore, this factor is not applicable.

f. Whether the Claims are for Injunctive Relief or for Damages

The consideration of whether a claim is for injunctive relief is based on the theory that the "rigorous application" of the numerosity requirement is not necessarily "warranted" where a party is seeking "injunctive relief against discriminatory practices by a defendant."[46] This was because "the defendant will not be prejudiced if the plaintiff proceeds on a class action basis, as opposed to an individual basis, because the requested relief generally will benefit not only the claimant but all other persons subject to the practice under attack."[47]

---

[43] *See* 5 Moore's Federal Practice - Civil § 23.22[1][f] (2020); 1 Moore's Manual--Federal Practice and Procedure § 14A.22[2] (2020).

[44] *See e.g., Int'l Molders' & Allied Workers' Loc. Union No. 164 v. Nelson*, 102 F.R.D. 457, 461 (N.D. Cal. 1983) ("where the class includes unnamed, unknown future members, joinder of such unknown individuals is impracticable").

[45] *See* [Doc. No. 22-1] at 13.

[46] *See Weiss v. York Hosp.*, 745 F.2d 786, 808 (3d Cir. 1984) (citing 7 C. Wright & A. Miller, Federal Practice & Procedure § 1771, at 663–64 (1972)).

[47] *Id.*

This reasoning has subsequently been called into question in *Mielo v. Steak 'n Shake Operations*, where the Third Circuit explicitly held that the numerosity requirement is not relaxed for a request of injunctive relief.[48] In *Mielo* the Third Circuit also took the opportunity to clarify *Modafinil* and explained that "the type of relief sought by a plaintiff may be one factor that a court takes into consideration. It will always be up to the district court to explain how the form of relief has impacted its analysis."[49]

Plaintiff does request injunctive relief, but the primary relief sought is injunctive damages.[50] This factor is therefore not applicable. However, to the extent that this Court is to consider the type of relief sought in determining if joinder is impracticable, it favors joinder when considering judicial economy and favors class certification when considering motivation to join.

### 2. *Analysis of the Modafinil Factors*

The numerosity analysis "requires a district court judge to take into account the context of the particular case."[51] The context of this case is that it was brought under the FDCPA. The FDCPA explicitly anticipates the use of class actions.[52] Indeed, they "appear to be fundamental to the statutory structure of the FDCPA."[53] Congress likely envisioned their use to effectuate the

---

[48] *See* 897 F.3d 467, 486–87 (3d Cir. 2018).

[49] *Mielo*, 897 F.3d at 487.

[50] Amend. Compl. [Doc. No. 7] at 8.

[51] *Modafinil*, 837 F.3d at 249 (citations and quotations omitted).

[52] *See* 15 U.S.C. § 1692k(a)(2)(B).

[53] *Weiss v. Regal Collections*, 385 F.3d 337, 345 (3d Cir. 2004), *as amended* (Sept. 29, 2004), *and abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016); *see also Barnett v. Experian Info. Sols.*, No. 00-175, 2004 WL 4032909, at *5 (E.D. Tex. Sept. 30, 2004) ("The language of the FDCPA governing the recovery in class actions is an indication that Congress views the availability of the class action procedure as an integral part of the enforcement regime.").

purpose of the statute because without them, "meritorious FDCPA claims might go unredressed because the awards in an individual case might be too small to prosecute an individual action."[54]

More important, there is an overlap between the reasons for Congress's inclusion of class actions within the FDCPA and the justifications for the consideration of the motivation for a claimant to join. Both are to allow for judicial relief "for those persons with claims that would be uneconomical to litigate individually."[55] Therefore, in the context of this FDCPA action, the motivation and ability to litigate, and the financial resources of the potential plaintiffs, are the most relevant factors, as these factors vindicate the purpose of the FDCPA. These factors strongly favor class certification and the Court finds that they render joinder impracticable. The numerosity requirement is satisfied.

### B. Commonality

The commonality requirement is met if there is least one question of law or fact common to the class.[56] The only issue here is whether the language of the dunning letter violates § 1692g(a)(4) and (5) of the FDCPA.[57] Because all members of the class received substantially similar debt collection letters, all members share a common question of law as to whether the language of the letter violates the FDCPA.

---

[54] *Regal Collections*, 385 F.3d at 345.

[55] *Marcus*, 687 F.3d at 594.

[56] *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527–28 (3d Cir. 2004).

[57] *See* [Doc. No. 22-1] at 1, 2; Compl. [Doc. No. 1] ¶¶ 8–16.

### C.  Typicality

The typicality requirement is met if the claims of the representative party is typical of the claims of the class.[58] There is only one claim at issue here, which all members share. The typicality requirement is satisfied.

### D.  Adequate Representation

Class members are adequately represented if: 1) class counsel is qualified to represent the class; and 2) the interests of the class representatives are not in conflict with the interests of the class members.[59] Class Counsel appear well qualified, having competently briefed the motions in this case and having resumes indicating relevant experience and expertise, including the handling of numerous FDCPA matters and being appointed Class Counsel in other FDCPA cases.[60] The qualification prong is met.

There is no indication that named Plaintiff, Juanita Muse, cannot fairly and accurately protect the interests of the class. There is also no indication of any conflicts of interest with other class members. The Court has no reason to believe that a conflict of interest will occur. The no conflict of interest prong is met. Named Plaintiff and Class Counsel would adequately represent the class.

### E.  Predominance

For the predominance requirement of Rule 23(b)(3), the Court has a duty "to take a 'close look' at whether common questions predominate over individual ones."[61] This case concerns one

---

[58] *See* Fed. R. Civ. P. 23(a)(3).

[59] *In re Warfarin*, 391 F.3d at 532; *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 800 (3d Cir. 1995).

[60] [Doc. No. 22-1] at 20.

[61] *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) (citations and quotations omitted).

narrow legal question that is shared with all class members. The predominance requirement is satisfied.

### F.  Superiority

To satisfy the superiority requirement, the Court must "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication."[62] The analysis of superiority is similar to the first two numerosity factors. But superiority also considers other alternatives besides joinder, such as plaintiffs bringing individual actions.[63] As discussed above, a class action would be preferable to joinder, and any judicial economy benefits that joinder would have over a class action would be lost if there were 32 individual lawsuits. Additionally, as discussed above, Congress has contemplated the use of class actions to enforce the FDCPA, and for this suit, a class action is particularly useful to effectuate the remedial nature of the statute. The superiority requirement is satisfied.

### IV.  CONCLUSION

Because Plaintiff has shown all elements of Rule 23(a) and Rule 23(b)(3) are satisfied, class certification will be granted. An order will be entered.

---

[62] *In re Prudential Ins. Co. Am. Sales Prac. Litig.*, 148 F.3d 283, 316 (3d Cir. 1998) (citations and internal quotations omitted).

[63] *See Modafinil*, 837 F.3d at 253 n.11.

13